UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 09-10006-RGS

UNITED STATES OF AMERICA

v.

DANIEL SMITH

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO VACATE JUDGMENT

December 20, 2013

STEARNS, D.J.

Petitioner Daniel Smith moves to set aside his conviction and vacate his guilty plea pursuant to 28 U.S.C. § 2255. Smith alleges that the well-publicized misconduct of chemist Annie Dookhan rendered his plea involuntary in violation of the Due Process Clause of the Fifth Amendment. For the reasons stated below, Smith's motion will be denied.

BACKGROUND

On May 21, 2008, an ATF Special Agent learned from a cooperating witness (CW) that Smith was dealing cocaine base (colloquially referred to as crack cocaine). At the Agent's direction, the CW purchased $300 of what appeared to be crack cocaine from Smith at Smith's residence. During this transaction – which was recorded and monitored – the CW brought a scale provided by the ATF and weighed the substance Smith offered to sell. One

week later, the CW placed three monitored and recorded calls to Smith. As before, the CW drove to Smith's home and purchased $300 of what appeared to be crack cocaine, which was again captured on audio and video recordings. On June 13, 2008, ATF agents executed a search warrant for Smith's apartment. After receiving a *Miranda* warning, Smith told the agents that he had drugs and money hidden in a box in his bedroom. Inside the box, agents found twenty-one small plastic bags of a white substance and almost $800 in cash.

The drugs Smith sold to the CW in both transactions were submitted to the Department of Publich Health (DPH) Drug Laboratory in Jamaica Plain, Massachusetts for testing. Annie Dookhan certified that the drugs purchased by the CW on both occasions had tested positive for crack cocaine and had a net weight of 5.26 grams and 5.29 grams, respectively .[1] Of the twenty-one bags found in Smith's home, five were tested. Each of the five bags tested positive for cocaine base, and the twenty-one bags were estimated to weigh a total of 4.67 grams (based on an extrapolation from the bags Dookhan claimed to have actually weighed).

Smith was arrested and charged with two counts of distribution of

---

[1] The drugs Smith sold to the CW on May 21st also field-tested positive for the presence of cocaine.

cocaine base (21 U.S.C. § 841(a)(1)), one count of possession with intent to distribute cocaine base (21 U.S.C. § 841(a)(1)), and one count of retaliation against an informant (18 U.S.C. § 1513(b)(2)) (based on a threatening voicemail he left for the CW).[2] During his interview with ATF agents, Smith admitted to being a crack cocaine dealer and offered his professional opinion that there was a major shortage of crack in the New Bedford area. He pled guilty to all charges on December 2, 2012. At his Rule 11 hearing, the government recited the facts described above. When asked directly by the court, Smith stated that the government's recitation of the facts was accurate and that he was guilty of the offenses charged. At no point did Smith contend that the drugs he possessed and sold were not crack cocaine. The court noted the "overwhelming" evidence presented by the government and accepted Smith's plea, finding that he fully understood his rights, the consequences of waiving those rights, and that he had concluded given the strength of the government's evidence that it was in his best interest to plead guilty.

Smith's pre-sentence report determined that he was a career offender under U.S.S.G. § 4B1.1. The career offender designation placed his total

---

[2] Smith was carrying three plastic bags of white substance at the time of his arrest. These were also certified to be crack cocaine by Dookhan, but did not figure in the indictment.

offense level at 29 (after deducting three levels for acceptance of responsibility) and gave him a criminal history classification of VI, with a resulting advisory Guideline range of 151 to 188 months. On February 29, 2012, the court imposed a sentence of 156 months.

The United States Attorney's Office first became aware of Dookhan's misconduct at the DPH Laboratory sometime in February 2012. At that time, Dookhan's only known transgression was removing ninety drug samples from the laboratory's evidence room without authorization. A subsequent DPH investigation, however, brought to light a wide range of improprieties and in a statement to investigators, Dookhan admitted to breaching laboratory protocol, rigging test results (including the deliberate contamination of negative samples with a known drug from a completed test), and falsely certifying that she had tested drug samples when she had, in fact, only subjected them to a visual examination. Dookhan has since pleaded guilty to eight counts of tampering with evidence, one count of perjury, one count of falsely claiming to hold a master's degree, and seventeen counts of obstruction of justice.

Following the revelation of the extent of Dookhan's misconduct, the government sent the sixteen untested bags seized from Smith's residence to a laboratory of the United States Drug Enforcement Agency (DEA) for testing.

The DEA Lab tested twelve of the bags and found them to contain cocaine base.

## DISCUSSION

Smith moves to vacate his guilty plea on the grounds that the government's failure to disclose the full extent of Dookhan's misconduct (1) violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and (2) rendered his plea involuntary under *Brady v. United States*, 397 U.S. 742 (1970). Like the petitioners in *United States v. Wilkins*, 2013 WL 189961 (D. Mass. May 8, 2013), Smith does not make a claim of actual innocence. Rather, the premise for his petition is that, "if he knew that the Dookhan test results and physical evidence that had been in Dookhan's possession was likely inadmissible [or greatly weakened in credibility], he would not have entered a guilty plea." Pet.'s Mot. at 30. Because Smith's Fifth Amendment claims are identical to those made in *Wilkins*, they are rejected for the reasons set out in that opinion.

As discussed in *Wilkins*, a defendant does not have a constitutional right to discover impeachment evidence prior to entering a guilty plea. *United States v. Ruiz*, 536 U.S. 622, 633 (2002). Although a plea must be voluntary to satisfy constitutional standards, "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware')." *Id*. (emphasis and

alteration in original). *Id.* Thus, the government did not commit a *Brady* violation in failing to reveal impeachment information that Smith could have used to gain a strategic advantage at trial. *See United States v. Mathur*, 624 F.3d 498, 507 (1st Cir. 2010) ("*Ruiz* teaches that *Brady* does not protect against the possible prejudice that may ensue from the loss of an opportunity to plea-baragain with complete knowledge of all relevant facts. This makes good sense: when a defendant chooses to admit his guilt, *Brady* concerns subside.").

Similarly, Smith cannot show that his plea was involuntary under *Brady v. United States*. To accomplish that, he would first have to prove that "egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea." *Ferrara v. United States*, 456 F.3d 278, 290 (1st Cir. 2006). Such egregious government misconduct was found in *Ferrara* where the prosecution suppressed a key murder witness's recantation and coerced the witness (who feared losing his immunity and with it physical protection from a notorious crime family) into reverting to testimony falsely implicating the defendant in a murder. *Id.* at 292. "[T]he evidence tended to negate the petitioner's guilt . . . . Since these admissions, if accepted as true, would have precluded a jury from holding the petitioner liable for the [charged] murder, *the suppressed*

*evidence was suggestive of the petitioner's factual innocence." Id.* (emphasis added).

As in *Wilkins*, the only impeachment evidence available to the prosecutor at the time of Smith's guilty plea was a letter from the DPH Director of Laboratory Services describing a breach of protocol committed by Dookhan in an unrelated case that did not affect the integrity of the drug samples involved in Smith's case. The evidence against Smith, on the other hand, was overwhelming. His transactions with the CW were consistent with selling crack cocaine; it is highly unlikely that Smith would have engaged in multiple drug deals selling faux crack cocaine to a buyer sophisticated enough to bring his own scale to weigh the drugs, while telling Smith that his customer was a "good one." More importantly, Smith admitted to ATF agents that he was a crack cocaine dealer and voluntarily told them of the location of the drugs in his home. Even now, Smith does not claim that the crack cocaine he possessed and sold was counterfeit. Consequently, nothing implicates the crux of the first prong of the *Ferrara* exception – coercive misconduct that compromises a defendant's claim of *factual innocence. See Menna v. New York*, 423 U.S. 61, 62 n.2 (1975) ("In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid

7

establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.").

ORDER

For the foregoing reasons, Smith's motion to set aside his conviction and vacate his guilty plea is <u>DENIED</u>.

                          SO ORDERED.

                          /s/ Richard G. Stearns

                          _____
                          UNITED STATES DISTRICT JUDGE